NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


MARK ROUSEY, DC# H12058,   )
   )
      Appellant,   )
   )
v.   )   Case No.   2D16-4186
   )
STATE OF FLORIDA,   )
   )
      Appellee.   )
_____)

Opinion filed August 30, 2017.

Appeal from the Circuit Court for Polk
County, Glenn T. Shelby, Judge.

Howard L. Dimmig, II, Public Defender, and
Kevin Briggs, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Cerese Crawford Taylor,
Assistant Attorney General, Tampa, for
Appellee.


SLEET, Judge.

Mark Rousey appeals the order revoking his community control in case numbers CF00-146 and CF13-5307. Because the trial court's finding that Rousey committed a willful and substantial violation of his community control was not supported by competent substantial evidence, we reverse.

Rousey was convicted of lewd or lascivious battery and lewd or lascivious molestation and was originally sentenced to concurrent terms of ten years' prison followed by five years' probation in case number CF00-146. In 2013, Rousey pleaded guilty to committing the new law offense of failing to register as a sex offender in exchange for five years' probation in case number CF13-5307. On November 20, 2015, the trial court revoked his probation in both case numbers and sentenced Rousey to concurrent sentences of eighteen months' community control followed by one year of probation on all counts. On April 21, 2016, the State filed a violation affidavit, alleging that Rousey violated conditions sixteen and nineteen of his community control by failing to remain confined to his approved residence and failing to follow the rules of electronic monitoring.

At the violation hearing, Rousey's community control officer testified that she gave Rousey permission to go to a cell phone store to repair his telephone and instructed him to return to his home by 1:00 p.m. When Rousey had not returned home by 1:00 pm, the monitoring center sent an alert to Rousey's monitoring device at 1:05 p.m. The community control officer unsuccessfully attempted to call Rousey on his cell phone and sent a message to Rousey's monitoring device at about 1:41 p.m. directing him to call her. Although Rousey acknowledged the message by pressing a button on his monitoring device, he did not immediately call his community control officer. The community control officer testified that Rousey's GPS monitoring records reflected that he returned home at 1:48 p.m. and that he was at a gas station near his home for the entire period of time he was out after 1:00 p.m.

Rousey testified that he did not have his own transportation and had to rely on his nephew to take him to the cell phone store. Rousey spent fifty minutes at the cell phone store only to learn that his phone could not be repaired there and that he would need to mail it in. After leaving the cell phone store, Rousey and his nephew stopped for gas; Rousey testified that his community control officer had previously indicated that he could stop for gas when needed without prior approval. Rousey explained that his nephew was unable to restart the car after purchasing gas and that they were stranded at the gas station for forty-six minutes. The State admitted a gas station receipt showing that Rousey's nephew purchased gas at 1:03 p.m. Rousey testified that neither he nor his nephew had a working phone and that he was therefore unable to immediately call his community control officer or respond to the alert on his monitoring equipment. When Rousey's nephew was able to start the car, the two returned to Rousey's residence, arriving at 1:48 p.m. Rousey testified that he called his community control officer using his stepmother's phone when he arrived home and explained the issue to her when she made contact with him later that evening.

The State argued that Rousey willfully failed to return his community control officer's calls and alerts and that he failed to make a good faith effort to return home by the approved time. The trial court agreed, finding that Rousey willfully and substantially violated condition sixteen by failing to remain confined to his approved residence and condition nineteen by refusing to follow the rules of electronic monitoring. The court revoked his supervision and sentenced him to fifteen years' prison for lewd or lascivious battery and to ten years' prison followed by two years' community control and three years' probation for lewd or lascivious molestation in case number CF00-146. The

court sentenced him to two years' community control in case number CF13-5307. Rousey now appeals the revocation of his community control and his sentences in both case numbers.

"When making the decision to revoke a defendant's community control, the trial court must determine whether the State has proven a substantial and willful violation by the greater weight of the evidence." Hugan v. State, 190 So. 3d 210, 211 (Fla. 2d DCA 2016); see also Robinson v. State, 907 So. 2d 1284, 1286 (Fla. 2d DCA 2005); Brown v. State, 813 So. 2d 202, 203–04 (Fla. 2d DCA 2002). This court has consistently held that a violation of supervision is willful only where the defendant fails to make reasonable efforts to comply with the alleged violated condition. See Hicks v. State, 890 So. 2d 459, 462 (Fla. 2d DCA 2004); Benedict v. State, 774 So. 2d 940, 941 (Fla. 2d DCA 2001); Jacobsen v. State, 536 So. 2d 373, 375 (Fla. 2d DCA 1988); Scott v. State, 485 So. 2d 40, 41 (Fla. 2d DCA 1986). On appeal, this court reviews the trial court's decision to revoke supervision for an abuse of discretion. Hugan, 190 So. 3d at 211.

The evidence presented at the hearing reflected that Rousey was engaged in an approved activity at the time of his alleged violation; "[t]he only problem was that he performed this . . . act outside the window of time in which this activity was supposed to occur." See id. (alteration in original) (quoting Filmore v. State, 133 So. 3d 1188, 1193 (Fla. 2d DCA 2014)). The State did not dispute that Rousey was at the gas station, that he had permission from his community control officer to stop for gas, or that he was stranded while his nephew attempted to fix his car. And there was no evidence that Rousey, who had permission to visit a cell phone store to fix his broken phone, had

- 4 -

access to a phone from which he could call his community control officer while he was stranded at the gas station. Rousey's failure to timely contact his community control officer and to return home was at worst due to negligence or ineptitude; therefore, the trial court abused its discretion in finding a willful and substantial violation of community control. See id. at 211 ("[A] violation of probation will not be found where the violation is due to negligence or ineptitude." (quoting Filmore, 133 So. 3d at 1193–94)); Thomas v. State, 672 So. 2d 587, 589 (Fla. 4th DCA 1996) (reversing a revocation order when the defendant failed to comply with his curfew because of a flat tire and explaining that the violation was a result of his ineptitude or negligence, not "the product of a knowing and willful act" (quoting Stevens v. State, 599 So. 2d 254, 255 (Fla. 3d DCA 1992))); see also Boatwright v. State, 847 So. 2d 1141, 1142 (Fla. 3d DCA 2003) (reversing a revocation order based on the defendant's five-and-a-half-hour delay returning home from church when it was caused by his attendance at additional church activities); Hern v. State, 747 So. 2d 1039, 1039–40 (Fla. 4th DCA 1999) (concluding that the defendant did not willfully or substantially violate her curfew when she was thirty-five minutes late because she missed the bus and had to walk).

Accordingly, we reverse the order of revocation and subsequent sentences, and we remand for reinstatement of Rousey's supervisory sentences.

Reversed and remanded with instructions.

KHOUZAM and BADALAMENTI, JJ., Concur.